UNITED STATES, Appellant
v.
ROBERT GUY THOMPSON, Radarman Seaman Apprentice, U. S. Navy, Appellee
2 USCMA 460, 9 CMR 90

No. 1673

Decided May 7, 1953

CDR Thomas E. Blade, USN, for Appellant.
CDR John T. Davies, USN, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A Navy board of review has, in this case, reversed a special court-martial conviction for missing ship through neglect. The accused was charged with missing his ship which sailed on July

7, 1952. The prosecution introduced evidence showing that the accused had positive knowledge on June 7, 1952, of the scheduled movement; that he went absent without leave on June 17, 1952; that the ship sailed as scheduled on July 7; and that the accused returned on July 27. Defense offered no evidence. The board of review held that there was no proof of causal connection between the neglect of the accused and the missing of the scheduled movement and therefore dismissed the charge. The Judge Advocate General of the Navy has certified to us the following three questions:

"(1) Was the evidence sufficient, as a matter of law, to establish a prima facie case of missing movement through neglect?

"(2) Is knowledge of movement on or about the date of such movement an essential element of the offense of missing movement through neglect?

"(3) If question (2) is answered in the affirmative, is there a legal presumption that knowledge of movement date possessed by the accused prior to the commencement of an absence continues until the contrary is shown by competent evidence?"

It is immediately apparent that the net of the questions certified is the single issue of whether there is here sufficient evidence to support the findings. We are reluctant to arrogate to ourselves the power to render advisory opinions and are sure that Congress, through Article 67 of the Uniform Code of Military Justice, 50 USC § 654, intended to vest this Court with power to decide issues of law only in so far as such issues are raised in individual cases coming before the Court. We cannot, therefore, answer the second and third certified questions as hypothetical or in vacuo problems. They can be answered only in relation to the evidence presented in this particular case.

Further, as we read the opinion of the board of review, it amounts to a factual determination that there is insufficient evidence to support the findings. If this determination is based solely on an ap-

praisal of the evidence, we shall not overturn it. See United States v. Zimmerman (No 261), 6 CMR 12, decided October 6, 1952. Our jurisdiction is limited to questions of law and we shall, therefore, review the decision of the board of review only in so far as it purports to delineate the legal elements of the offense under consideration. Our sole inquiry is whether, under the circumstances of this case, it was necessary as a matter of law for the Government to establish that the scheduled movement was the proximate cause of the unauthorized absence of the accused.

The present controversy stems from one sentence included in the discussion of this offense in paragraph 166 of the Manual for Courts-Martial, United States, 1951: "However, there must always be a causal connection between the conduct of the accused and the missing of the scheduled movement." The Navy board of review interpreted this to mean that causal connection—in the sense that missing the scheduled movement must be the proximate result of the negligent conduct of the accused—is an essential element of the offense here charged. Being an essential element, reasoned the board, it must be proved by the Government. The logical conclusion reached is that the Government failed to prove that the accused's absence was a proximate cause of his missing the scheduled movement and that this results in an insufficiency of the evidence to support the findings.

We may note at the outset that missing ship through neglect is an offense newly created by the Uniform Code of Military Justice. Under prior Navy law, "missing movement" required a positive intent to avoid particular shipboard service, and was charged as a violation of Article 22 of the Articles for the Government of the Navy, 34 USC § 1200, as conduct to the prejudice of good order and discipline. See CMO 3, 1916, page 7; CMO 141, 1918, page 16; CMO 4, 1935, page 6. Where the specific intent to avoid scheduled movement was not present, the fact of missing ship was alleged as a matter in aggravation to a charge of unauthorized absence.

Naval Courts and Boards, 1937, Section 98, Footnote 33. There was no such offense as missing movement through neglect. The Army, under the Articles of War, recognized the offense of "absenting himself with the intent to avoid maneuvers," under Article 61, 10 USC § 1533. Manual for Courts-Martial, US Army, 1949, paragraph 149. Mr. Felix Larkin, in testifying before the House subcommittee on Article 87 of the Uniform Code of Military Justice, 50 USC § 681, said: "Now, I say that is new, Mr. Chairman. It really is an aggravated form of absence without leave, but the type of absence without leave which is specifically connected with the circumstance of missing a ship or a unit when it is about to move." Hearings before House Committee on Armed Services, 81st Congress, 1st Session, on HR 2498, at page 1258.

In creating this new offense, Congress established two degrees. First is missing movement through design. This imports a deliberate, intentional avoidance of a scheduled movement. Second is missing movement through neglect. Paragraph 166 of the Manual defines the last two words as follows:

" 'Through neglect' means the omission by a person to take such measures as are appropriate under the circumstances to assure that he will be present with his ship, aircraft, or unit at the time of a scheduled movement, or his doing of some act without giving attention to its probable consequences in connection with the prospective movement, such as a departure from the vicinity of the prospective movement to such a distance as would make it likely that he could not return in time for the movement."

This discussion makes it clear that the second branch of the Article 87 offense, supra, is intended to cover those situations where the accused does not consciously intend to avoid the scheduled movement, but through a negligent act or omission on his part fails to be present at the time of a scheduled movement.

Paragraph 166, after making the distinction between the two gradations of the offense, goes on to discuss the element of knowledge. It is in this discussion that the sentence requiring causal connection is used:

"In order to be guilty of the offense, the accused must know, or have cause to know, of the prospective movement which he is alleged to have missed. Knowledge of the exact hour or even of the exact date of the scheduled movement is not required. It is sufficient if the approximate date is known to the accused. *However, there must always be a causal connection between the conduct of the accused and the missing of the scheduled movement.* Knowledge of the scheduled movement may be proved by remarks made by the accused to others or by testimony that the accused was informed, directly or indirectly, of the prospective movement. . . ." [Emphasis supplied]

It is apparent that, in the minds of the drafters of the Manual, the requirement of causal connection is related to the element of knowledge. It is important, we think, that the sentence in question follows immediately the statement that knowledge of an approximate date of scheduled movement will be sufficient for the offense. That the required element of causal connection is related to the statement permitting proof of approximate date is shown by the use of the word "However." We think that, by this sentence, the drafters intended to cover the situation where, for example, a sailor is told that his ship is scheduled to sail about the 7th of July. The sailor's leave expires at midnight on the 6th, but he does not return until 8:00 a.m. on the 7th. The ship sails at midnight on the 6th. In such a situation, it would be difficult to say that there is a causal connection between the conduct of the accused and the missing of the scheduled movement. In other words, because of the uncertainty in the mind of the sailor as to the precise time of departure, he could not reasonably have foreseen that staying over leave for eight hours would result in missing his ship. The point we intend to make is that causal connection becomes relevant only when the accused could not reasonably foresee that his act or omission would result in missing the move-

**463**

ment. Generally this could occur only where the time scheduled for the movement is indefinite or approximate. Where a definite movement date is set and known to the accused, who thereupon remains absent without authority beyond the scheduled date of departure, we can see no necessity for any special proof of causal connection. Assuming knowledge, the only rational explanations are either deliberate avoidance or carelessness resulting in avoidance.

It is our conclusion that the drafters of the Manual intended to require causal connection between the conduct of the accused and the missing of the movement as an affirmative element of the offense only where an approximate date of movement is known to the accused. However, even if we assume that causal connection must be shown where there is a scheduled date of movement, known to the accused, and an unauthorized absence running well past that date, we think that the necessary causal connection is thereby established prima facie. In other words, it is reasonable to assume that, if an accused missed a known movement by an unauthorized act, the missing resulted proximately from the doing of the act. Ordinarily, a court is entitled to rely upon the natural and probable consequences of a given act or omission. See United States v. Squirrell, (No 657), 7 CMR 22, decided January 26, 1953.

In this case, it was established that the accused signed on June 7, 1952, a statement acknowledging the information that his ship was scheduled to sail from Norfolk, Virginia, for duty beyond the continental limits of the United States on or about July 7, 1952. The accused pleaded guilty to unauthorized absence from June 17, 1952, until July 27, 1952. The ship sailed as scheduled. We think it may fairly be said that these circumstances give rise to a presumption that the accused knew of the prospective movement at the commencement of his unauthorized absence. Sailors, when formally told—as was this accused—of a departure from the continental limits, do not normally forget such information. Further, it would be asking the impossible to require the Government to establish that the accused knew on the date of scheduled departure that his unauthorized absence was causing him to miss the movement. This would, in effect, make missing movement through neglect practically equivalent to missing movement through design. It is sufficient, we think, to say that the accused knew when he went absent without authority of the scheduled departure date and that he did not return until after that date.

It is our conclusion that the board of review erred in concluding, as it apparently did, that the Government is required in proving the offense of missing ship through neglect to show something more than that the accused had a duty to move with his ship, that the movement was substantial, that the accused knew of the prospective movement, and that he was absent without authority when the ship actually sailed on the scheduled date. If we were reviewing the record de novo, we would be inclined to say that, as a matter of law, there is here sufficient evidence to establish a prima facie case of missing ship through neglect. This answers the certified questions as completely as it is possible to do in the present posture of the case. We should make it abundantly clear that if the board of review here determined that, conflict as to the issue of causal connection aside, there was insufficient evidence to support the findings, we are not reversing that determination.

The decision of the board of review is reversed. The case is remanded to The Judge Advocate General of the Navy for referral to a board of review for reconsideration in the light of this opinion.

Judge BROSMAN concurs.

Judge LATIMER concurs in the result.