UNITED STATES, Appellee

v.

ALFRED J. JOHNSON, Private, U. S. Air Force, Appellant

3 USCMA 174, 11 CMR 174

No. 2097

Decided July 31, 1953

Col Kenneth B. Chase, USAF, and Maj Cecil F. Rowe, USAF, for Appellant.

Col David D. Porter, USAF, Lt Col Harold Anderson, USAF, Maj Stanley I. Harper, USAF, and Capt William G. Carrow, III, USAF, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused was convicted by a special court-martial of two separate offenses of absence without leave in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680, missing movement through neglect in violation of Article 87, 50 USC § 681, and two separate offenses of breach of restriction, in violation of Article 134, 50 USC § 728. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, and a partial forfeiture for a like period. The convening and supervisory authorities approved the findings and sentence. A board of review in the office of The Judge Advocate General of the Air Force affirmed the findings relating to absence without leave and breach of restriction. Holding that the evidence relating to the offense of missing movement was sufficient to establish only a disorder, the board affirmed a finding of missing movement in violation of Article 134, supra, as a lesser included offense, and affirmed the sentence.

We granted the accused's petition for review limiting our consideration to a single issue:

"Whether the affirmation of the finding of guilty of Charge II, as modified, and the sentence, are legal."

The maximum period of confinement authorized without substitution, for the offenses of absence without leave and breach of restriction in this case, is 165 days. Consequently, if the finding of guilty of missing movement is void, the imposition of a bad-conduct discharge is improper.[1]

The specification of Charge II alleged that the accused:

". . . did at, Lawson Air Force Base, Fort Benning, Georgia, on or about 5 February 1952, through design miss the movement to Operation Long Horn, Authority paragraph 35, Special Orders 23, dated 30 January 1952, Headquarters, 434th Troop Carrier Wing (M), with which he was required in the course of duty to move."

This specification does not allege that

---

[1] Section B, paragraph 127c, Manual for Courts-Martial, United States, 1951.

**175**

the accused missed the movement of a ship, aircraft, or unit. It ▪ is therefore defective, and we are faced with the necessity of determining, first, whether the specification, as thus defectively drawn, is sufficient to allege an offense; and, second, whether the accused was misled or otherwise materially prejudiced thereby. Paragraph 87a(2), Manual for Courts-Martial, United States, 1951.

Article 87 of the Code, supra, provides:

"Any person subject to this code who through neglect or design misses the movement of a ship, aircraft, or unit with which he is required in the course of duty to move shall be punished as a court-martial may direct."

The gist of the offense proscribed by this Article is *missing movement*. The terms "ship," "aircraft," and "unit," are merely descriptive of a particular means of movement. Consequently an allegation that the accused on a date certain missed a movement to a particular destination satisfies the minimum requirements of the Article.

In United States v. Marker (No. 281), 1 USCMA 393, 3 CMR 127, decided May 19, 1952, we adopted the following norm for determining the effect of defective specifications:

". . . . 'The true test of the sufficiency of an indictment is not whether it could have been more definite and certain, but whether it contains the elements of the offenses intended to be charged.' Hagner v. United States, 285 US 427, 431. If the indictment informs the accused of what he must be prepared to meet, and is sufficiently definite to eliminate the danger of future jeopardy, it will be held sufficient. . . ."

Tested by this standard, it affirmatively appears that the accused was not misled by the defective pleading for he defended against the allegations by denying knowledge of his assignment to "Operation Long Horn," demonstrating his appreciation of the full import of the specification. Moreover, the particularity with which the specific movement was alleged, coupled with the careful proof of this same movement by evidence presented at the trial, foreclosed any possibility of double jeopardy. United States v. Marker, supra; United States v. Snyder (No. 409), 1 USCMA 423, 4 CMR 15, decided June 5, 1952.

Since the offense was properly alleged, the prosecution was at liberty to establish the means of its commission by proving that the accused missed the movement of either a ship, an aircraft, or a unit, in the absence of a defense motion for further particulars. Paragraph 69b, Manual, supra.

The prosecution clearly established that the accused "missed the movement of an aircraft with which ▪ he [was] required in the course of duty to move." The evidence indicates that on January 28, 1952, Master Sergeant Weiger informed the accused and two other members of his organization stationed at Lawson Air Force Base, Fort Benning, Georgia, of their selection to participate in a maneuver designated "Operation Long Horn" and advised them that they would proceed to Fort Hood, Texas, during the latter part of the week or the early part of the following week. Thereafter, the accused, representing that he was leaving for his home prior to departing for the operation, prevailed upon the supply sergeant to issue the required equipment prior to the scheduled date of issue. Early on the morning of February 3, 1952, the accused awakened Sergeant Weiger requesting a pass. His request was refused, however, for the group was expected to leave within two days. The accused then absented himself without leave. The following day the accused's organization received the orders referred to in the specification of Charge II, providing for the movement of individuals, including the accused, to "Operation Long Horn." These orders confirmed the information given the accused by his first sergeant. When the aircraft provided for the movement of those selected for participation in the operation departed on February 5, 1952, the accused

was still absent without leave and missed the movement. He did not return until March 3, 1952.

With this evidence and the court's findings thereon before it, the board of review determined that a violation of Article 87, supra, was not established, for it did not appear that the accused was assigned to duty with the aircraft, the movement of which he missed, nor was he a member of a "unit" to be transported, as the term "unit" is used in Article 87. The board decided, however, that the evidence was sufficient to support a finding of a disorder in violation of Article 134, supra. As an offense most closely related to the offense of failing to go to the appointed place of duty, the maximum penalty was held to be confinement for one month and forfeiture of one month's pay. On this basis the board affirmed the sentence.

This decision was a conclusion of law, not of fact. Consequently, we are required to determine the validity of this conclusion before resolving the question raised by the issue framed in our grant of the accused's petition for review.

The movement described in the specification and found by the court to have been missed was one included within the terms of the Article. With this question, we are not concerned. A serious question, however, is presented by the conclusion that the accused must be assigned to duty with the aircraft involved in the movement or be a member of a unit "established prior to movement with intention that they have organizational continuity upon arrival at their destination."

No such limitations are found in the language of the Article itself, in the provisions of paragraph 166, Manual for Courts-Martial, United States, 1951, which explains the Article, nor in any expression of Congressional intent found in the hearings and the reports of the Committees on Armed Services of the Senate and House of Representatives. The purpose of this Article is most succinctly described by Professor E. M. Morgan, Jr., in his testimony before the Senate Committee as follows:

"In addition, we have made specific several offenses which were previously punishable under the general articles. One of them we designated as 'missing movement,' which is contained in article 87. This is an aggravated type of absence without leave and is designed to meet conditions encountered in World War II. The experience of World War II indicates that a large number of military personnel who were legitimately on leave or who left without permission returned after their unit or ship had moved or sailed. This misconduct caused so much trouble that it was felt necessary to make it a subject of a specific article. . . . ." [Hearings before Senate Committee on Armed Services, 81st Congress, 1st Session, on S. 857 and H. R. 4080, at page 37.]

Reason does not indicate the necessity for such limitation. Under the rule announced by the board of review, if an individual is ordered to proceed to an important military operation via an aircraft or a ship, to a crew of which he was not assigned to duty, and he misses the movement through design or neglect, Article 87, supra, has not been violated. The only offense committed is that of failure to repair, absence without leave, or desertion with intent to avoid hazardous duty or to shirk important service, depending upon the nature of the military operation involved. Were a commander limited to a selection of one of these extremes, he would be required to charge either a very minor offense, thereby failing to satisfy the requirements of military discipline, or, to charge a much more serious offense requiring the establishment of a specific intent, thereby destroying the purpose of the Article, namely, the punishment of missing movement — an offense greater than mere absence without leave, and less than desertion. It should be abundantly clear that the purpose of the Uniform Code of Military Justice is not to destroy military discipline, or to make its dictates unduly severe. Its purpose is the improvement of military discipline by the melioration of the administration of justice in the armed services. The effect of the board's decision is to negative the clear purpose of

**177**

Congress in enacting Article 87, when the experiences of World War II clearly demonstrated the need for delineation of this offense.

The offense of missing movement, as a disorder under Article 134, supra, is not included in the foregoing recitation of alternatives, for, if the facts fail to establish all the essential elements of a violation of Article 87, supra, the elements actually found cannot be punished as a violation of the general Article. This conclusion necessarily follows from the first provision of paragraph 165 of the Manual, supra:

> "This article is designed to cover every case not elsewhere provided for in which any member of the armed forces is through his own fault not at the place where he is required to be at a prescribed time. . . . ."

We are convinced by this declaration, that all specific instances "in which any member of the armed forces is through his own fault not at the place where he is required to be at a prescribed time" are punishable under the provisions of Articles 85, 86, or 87, supra, the sole specific provisions relating to such instances. See United States v. Norris (No. 1756), 2 USCMA 236, 8 CMR 36, decided February 27, 1953.

In the instant case, the specification sufficiently alleged a violation of Article 87. The evidence established that at the time and place alleged, the accused missed the required movement by aircraft. This proof satisfied the requirements of Article 87. In the final analysis, the decision of the board of review left the allegations of the specification and the findings thereon undisturbed. The board, however, compounded its erroneous idea of the requirements of Article 87, by designating Article 134 as the codal provision violated. The plain fact is that Article 134 includes no such offense. Since the facts alleged and proved, as affirmed by the board of review, constitute as a matter of law, a violation of Article 87, the board should have affirmed the findings as to Charge II. United States v. Sammie C. Gordon (No. 1972), 2 USCMA 632, 10 CMR 130, decided June 12, 1953. Although no. prejudice resulted to the accused from this action (see paragraph 27, Manual for Courts-Martial, United States, 1951), we cannot affirm its action as to this Charge.

We therefore affirm the findings relating to the offenses of absence without leave and breach of restriction. The record is returned to The Judge Advocate General of the Air Force for further action by the board of review upon the charge of missing movement not inconsistent with this opinion.

Judge LATIMER concurs.

BROSMAN, Judge (concurring in part and dissenting in part):

Substantively, I agree without reservation. However, I see no reason to prolong the ultimate disposition of this case unnecessarily by further reference to a board of review. Although certainly a permissible disposition, I think it far more desirable for this Court itself to take the action left to the board of review. I would affirm the findings relating to the offenses of absence without leave in violation of Article 86, as affirmed by the board of review, and of missing movement in violation of Article 87, as found by the court-martial and approved by the convening authority.