**UNITED STATES, Appellee,**

v.

**Private First Class John W. GRAHAM, SSN 563–11–7216, United States Army, Appellant.**

**SPCM 16111.**

U. S. Army Court of Military Review.

26 Feb. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel Jerome E. Kelly, JAGC, Captain Judson W. Roberts, JAGC, and Captain Guy J. Ferrante, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Major Rexford T. Bragaw, III, JAGC, and Captain David A. Brown, JAGC, were on the pleadings for appellee.

Before JONES, GARN and HANFT, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

In accordance with his pleas, appellant was convicted of a 45-day absence without leave and of missing movement through design in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887 (1976). He was sentenced to a bad-conduct discharge, forfeiture of $325.00 per month for three months, confinement at hard labor for three months, and reduction to Private E–1. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement at hard labor for 30 days, forfeiture of $325.00 per month for two months, and reduction to Private E–1.

█ The sole question to be decided in this case is whether missing a port call for a Military Airlift Command (MAC) flight constitutes missing the movement of an aircraft within the meaning of Article 87, *supra*. We hold that it does. Article 87 provides:

"Any person subject to this chapter who through neglect or design misses the movement of a ship, aircraft, or unit with which he is required in the course of duty to move shall be punished as a court-martial may direct."

### I

The missing movement specification of which appellant was convicted alleges *inter alia* that PFC Graham did "at Rhein Main Air Force Base, Frankfurt, Germany, ... on or about 27 November 1980, through design miss the movement of Flight FLF2 with which he was required in the course of duty to move."

Prior to 27 November 1980, PFC Graham was assigned to the 2d Squadron, 11th Armored Cavalry Regiment stationed in Bad Kissingen, Germany. PFC Graham had received orders directing a permanent change of station (PCS) to Fort Ord, California with a reporting date of 3 January 1981. In connection with his PCS, appellant had received a port call for 27 November 1980 at Rhein Main Air Base and a reservation on MAC Flight FLF2 scheduled to depart Germany on that date. PFC Graham did not report for Flight FLF2.

During the providence inquiry, PFC Graham admitted that he was required in conjunction with his PCS to travel on MAC Flight FLF2; that he knew MAC Flight FLF2 was to depart on 27 November 1980 from Rhein Main Air Base; and that he missed the scheduled flight, choosing instead to remain in Bad Kissingen, Germany.

### II

The appellant contends that he did not miss the movement of an aircraft within the meaning of Article 87 because he was not assigned to, nor did he have any duties aboard the aircraft, *United States v. Burke*, 6 C.M.R. 588, 591 (AFBR 1952), and because he was neither traveling with his unit moving as an entity, *United States v. Pender*, 5 C.M.R. 741 (AFBR 1952), nor as a member of a group "established prior to movement with the intention that [it] have organizational continuity upon [its] arrival", *United States v. Burke, supra* at 592.

*United States v. Pender, supra*, is inapposite to the present case. In *Pender* the Air Force Board of Review was confronted with a specification which alleged that the accused missed the movement of a troop train through design. For the purpose of its decision alone, the Board postulated that the charging of a missed "troop train" was equivalent to the charging of a missed "unit". The Board then reversed the con-

viction for lack of proof, concluding that five airmen did not constitute a unit.

The facts in *United States v. Burke, supra,* are similar to those in the present case. The accused was charged and found guilty of "[missing] the movement of Commercial Air Movement number 8367 . . . with which he was required in the course of duty to move." The evidence showed that Burke had received orders changing his place of duty. Pursuant to those orders Burke was administratively assigned a seat on a commercial flight. Burke purposely missed the flight. The Air Force Board of Review reversed on two grounds. First, the evidence did not show that Burke was assigned to duty on the aircraft. The Board reasoned that the "significant factor [in a violation of Article 87] is whether the accused missed the movement of *his* airplane or *his* ship or *his* unit." 6 C.M.R. at 591. Second, although Burke was traveling with several other airmen, such an unstructured grouping did not constitute a "unit" within the meaning of Article 87.

We believe that the *Burke* position was effectively overruled by *United States v. Johnson,* 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953). In *Johnson* the accused was selected along with two other members of his organization to participate in an important military operation at another military installation. The accused, knowing of his imminent departure, purposely missed the flight scheduled for the movement of himself and the other selectees. The Air Force Board of Review had concluded as a matter of law that because Johnson was not assigned to duty with the aircraft and was not a member of a unit to be transported, Article 87 had not been violated. The Court of Military Appeals reversed, stating:

> A serious question . . . is presented by the conclusion that the accused must be assigned to duty with the aircraft involved in the movement or be a member of a unit 'established prior to movement with intention that they have organiza-

tional continuity upon arrival at their destination'.

No such limitations are found in the language of the Article itself, . . . nor in any expression of Congressional intent . . . Reason does not indicate the necessity for such limitation. *Id.* at 177.

■ The gist of the offense proscribed by Article 87 is missing movement. The terms "ship", "aircraft", and "unit" are merely descriptive of a particular means of movement. *Id.* at 176. The movement missed must be substantial in terms of duration, distance, and mission. *United States v. Smith,* 2 M.J. 566, 568 (A.C.M.R.1976). Practice marches of short duration and minor changes in location of ships, aircraft or units are not contemplated by the word "movement". Paragraph 166, *Manual for Courts-Martial,* United States, 1969 (Revised edition). Nor is a two-day maneuver sufficient. *United States v. Smith, supra.* However, a transfer of location in order to participate in an important military operation with a crew or unit to which the service member is not assigned may be substantial. *See United States v. Johnson, supra.*

■ Travel pursuant to PCS orders may be substantial in terms of duration, distance and mission. A space aboard a ship or aircraft reserved by the military for a service member, when not filled by the service member, has the potential for disruption of mission with which the drafters of Article 87 were concerned. *See United States v. Johnson, supra.* Generally, the failure to depart according to such a reservation is a missed movement within the meaning of Article 87. *United States v. Monod De-Froideville,* 9 M.J. 854 (A.F.C.M.R.1980) (military chartered aircraft); *United States v. St. Ann,* 6 M.J. 563 (N.C.M.R.1978) *pet. denied,* 7 M.J. 392 (C.M.A.1979) (commercial aircraft); *United States v. Gallagher,* 15 C.M.R. 911 (AFBR 1954) (ship).*

\* The purpose of Article 87, UCMJ, was to establish an aggravated form of absence without leave. The misconduct addressed by the framers of the *Code* was the late return of military

personnel who were either legitimately on leave or absent without permission and "returned after their unit or ship had moved or sailed." Hearings before Senate Committee on

The findings of guilty and the sentence are affirmed.

Judge GARN absent.

Armed Services, 81st Congress, 1st Session, S. 857 and H.R. 4080, at 37. The gist of the offense was not just "missing movement" but missing the movement of an organizational entity to which the accused belonged. We doubt that Article 87 was ever intended to cover a routine, individual permanent change of station by chartered aircraft or otherwise. Although we believe that the Court of Military Appeals' interpretation of Article 87 in *United States v. Johnson, supra,* was contrary to the intent of the framers of the *Code,* we are constrained to hold in accordance therewith.