**UNITED STATES, Appellee,**

v.

**John W. GRAHAM, Private First Class, U.S. Army, Appellant.**

**No. 43521.**

**SPCM 16111.**

U.S. Court of Military Appeals.

Nov. 21, 1983.

For Appellant: *Captain Brenda L. Lyons* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire II, Major Patrick F. Crow, Captain Guy J. Ferrante* (on brief); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major James F. Nagle.*

For Appellee: *Captain David A. Brown* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Captain Glenn D. Gillett* (on brief); *Major Rexford T. Bragaw III.*

*Opinion of the Court*

COOK, Judge:

The accused was tried by special court-martial, military judge alone, for failure to go, absence without leave, missing movement, escape from lawful custody, making a false official statement, and being drunk and disorderly, in violation of Articles 86, 87, 95, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 887, 895, 907, and 934, respectively. Pursuant to a pretrial agreement, he pleaded guilty to absence without leave and missing movement through design. After acquitting the accused on the other charges, the military judge sentenced him to a bad-conduct discharge, confinement for 3 months, forfeiture of $325.00 pay per month for 3 months, and reduction to private (E–1). In accord with the terms of the pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 30 days, forfeiture of $325.00 pay per month for 2 months, and reduction to private (E–1).[1]

---

1. During his statement prior to sentencing, the accused asked that the military judge impose a bad-conduct discharge.

The Court of Military Review affirmed the findings and sentence, 12 M.J. 1026 (1982), but in a footnote (*id.* at 1029) questioned the validity of our holding in *United States v. Johnson*, 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953), as it pertained to the offense of missing movement through design.

We granted review of the following issue: WHETHER THE APPELLANT'S PLEA OF GUILTY TO CHARGE II AND ITS SPECIFICATION WAS IMPROVIDENT AS A MATTER OF LAW BECAUSE THE MISSING OF A MILITARY AIRLIFT COMMAND FLIGHT FOR A PERMANENT CHANGE OF STATION MOVE IS NOT THE TYPE OF MOVEMENT CONTEMPLATED BY ARTICLE 87, UCMJ.

We hold that the accused's plea was not improvident as a matter of law and affirm.

Article 87 provides:

Any person subject to this chapter who through neglect or design misses the movement of a ship, aircraft, or unit with which he is required in the course of duty to move shall be punished as a court-martial may direct.

The Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 166,[2] excludes from the definition of "movement":

practice marches which are to be of short duration with a return to the point of departure contemplated, ... [and] minor changes in location of ships, aircraft, or units, as when a ship is shifted from one berth to another in the same shipyard or harbor or when a unit is moved from one barracks to another on the same post.

The specification alleging a violation of Article 87 stated, in pertinent part:

In that ... [the accused] ... did, at Rhein Main Air Force Base, Frankfurt, Germany, ..., on or about 27 November 1980, through design miss the movement of Flight FLF2 with which he was required in the course of duty to move.

**2.** The same language appears in the corresponding paragraph of the Manual for Courts-

During the providence inquiry the accused related that on the 27th of November, 1980, he had been assigned a flight reservation on Flight FLF2 which was to take him to his next permanent duty assignment at Fort Ord, California. However, he had earlier submitted a request to marry a German girl, but the required permission was still being processed at that time. He decided to miss his flight and remain in Germany with his fiance until the permission was finalized. He was eventually apprehended in a German guest house and returned to military control.

Appellate defense counsel now argues "that Article 87 ... was directed at the movements of organizational entities and intended to insure unit operational integrity," and did not encompass the accused's admitted behavior.

The accused was not moving with—or incident to the movement of—any unit or organization. Instead, he was proceeding individually on a permanent change of station from Germany to the continental United States. In this connection, space had been reserved on a Military Airlift Command flight scheduled to depart from Frankfurt en route to the United States on November 27, 1980. The accused admitted knowing when the flight would depart and that he was required to move with it, and that he intentionally did not board the aircraft.

The clear implication from the Article and the Manual is that it is the word "movement" that is controlling and the descriptions of means of "movement" are included for explanation and definition. Thus, "movement" may be of "a ship," an "aircraft," or a "unit." The use of the disjunctive "or" indicates that missing the movement of any one of the enumerated words is sufficient to constitute the offense: i.e., it is the missed "move," not the mode of moving, that is significant. The term "unit" is not defined in Article 87, and the

Martial, United States, 1951.

definition of this term in Article 25(c)(2), UCMJ, 10 U.S.C. § 825(c)(2), was not intended for use in interpreting other articles of the Uniform Code. However, if, as appellate defense counsel argue, "ship" and "aircraft" were used in Article 87 only to illustrate types of "units," the word "other" would have been inserted after "or."

Despite the language of Article 87, certain lower courts have interpreted the defined terms to be co-dependent, and concluded that missing the movement of an aircraft or ship is not prescribed by the Article unless the accused was assigned to the crew (unit) of the particular aircraft or ship. *See United States v. Gillchrest,* 50 C.M.R. 832 (A.F.C.M.R.1975); *United States v. Burke,* 6 C.M.R. 588 (A.F.B.R.1952); *United States v. Pender,* 5 C.M.R. 741 (A.F. B.R.1952); *contra United States v. Monod De Froideville,* 9 M.J. 854 (A.F.C.M.R.1980), *pet. denied,* 10 M.J. 189 (C.M.A.1980). This departure from what we consider to be the clear import of the statute has been based on language from the rather cryptic legislative history of Article 87:

> Mr. Larkin. Now, I say that [offense] is new, Mr. Chairman. It really is an aggravated form of absence without leave, but the type of absence without leave which is specifically connected with the circumstance of missing a ship or unit when it is about to move.
>
> Now, the experience of World War II was such that in a large number of cases persons who were either legitimately on leave or those who were not or who left without authority, did so just about the time that their ship was to sail or their unit was to move.
>
> It is considerably more serious for a man to be absent at that time than to be absent under other circumstances.
>
> It was felt that it is desirable and necessary to spell out those circumstances and facts in a specific article.

> I would expect that the maximum sentence for this type of absence without leave would be heavier than an absence without leave that takes place in different circumstances.
>
> Mr. Brooks. Do you think that article ought to include other things besides ships and aircraft—for instance, vehicles?
>
> Mr. Larkin. Well, or unit.
>
> Mr. Brooks. You could strike out "ships and aircraft" and put "unit" and leave it alone, but if you start to denominate the types of vessels, had you not better cover all of them?
>
> Mr. Larkin. Well, I think if he missed the movement of a truck it would not make any difference unless his whole unit was moving up front or overseas or wherever else they were going.
>
> So I think that would not cause the trouble you expect.
>
> Mr. Brooks. It did not in the last war, but you might have a case where you do not have to go overseas.

Hearings on H.R. 2498 Before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess., reprinted in *Index and Legislative History, Uniform Code of Military Justice* (hereinafter cited *Index and Legislative History*) 1258 (1949).

■ It is elemental that "[i]f the words used in the statute convey a clear and definite meaning, a court has no right to look for or to impose a different meaning." *United States v. Dickenson,* 6 U.S.C.M.A. 438, 449, 20 C.M.R. 154, 165 (1955); *see also United States v. Davidson,* 14 M.J. 81, 89, 90 (C.M.A.1982) (Cook, J., concurring in part, dissenting in part); *United States v. Ware,* 1 M.J. 282, 285 (C.M.A.1976). However, even beyond this, the thrust of the discussion in the legislative history quoted above is largely concerned with an explanation of the necessity for creating a new Article (at least for the Army and Air Force) in response to a need experienced in the then-recent World War II.[3] Thus, the main em-

**3.** Hearings on H.R. 2498 Before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess., reprinted in *Index and Legislative History, Uniform Code of Military Justice* (hereinafter cited *Index and Legislative*

*History*) 1226, 1258 (1949), notes that Article 87 "is taken from proposed AGN [Articles for the Government of the Navy], Article 9(57)." Prior to this, the offense was charged under AGN 22 as conduct to the prejudice of good

phasis should be put on the expressed justification for creating an offense, the punishment for which "would be heavier than an absence without leave that takes place in different circumstances." *Index and Legislative History, supra* at 1258.

We previously considered appellate defense counsel's argument in *United States v. Johnson, supra.* There the accused was charged with "miss[ing] [through design] the movement to Operation Long Horn." The Board of Review concluded that since it was not established that the accused was a member of the crew of the "aircraft" or a member of a "unit" to be transported, the evidence was insufficient to support a finding of guilty of Article 87. We rejected that interpretation of the Article, stating:

> Reason does not indicate the necessity for such limitation. Under the rule announced by the board of review, if an individual is ordered to proceed to an important military operation via an aircraft or a ship, to a crew of which he was not assigned to duty, and he misses the

order and discipline. Naval Courts and Boards 84, § 98 (1937). Specification 4 set out there reads:

> * * *, while so serving on board the U.S.S. ——, at ——, ——, well knowing that said ship was due to sail on or about August 20, 19——, did, then and there, without authority, deliberately and wilfully miss said ship when she sailed as aforesaid (33).

Note (33) states:

> Where deliberate intent does not exist, the offense should be charged as absence over leave or absence without leave, alleging as a matter of aggravation the fact that the accused missed the sailing of his ship.

The Naval Justice Manual of January 1949 offered this guidance:

> Most unauthorized absences from ships or mobile units should be considered in a serious light. Some commands continue to award inadequate punishments for unauthorized absence contrary to the directive... Where a man has missed the sailing of his ship or mobile unit, adequate disciplinary action is mandatory and, except under most unusual circumstances, trial by general court-martial is considered appropriate, regardless of the length of absence.

*Id.* at 298, para. 13D17.

It is apparent that the Naval experience with the offense was generally narrowed to absence from an assigned "crew position" on the ship involved, which for obvious reasons would be a

movement through design or neglect, Article 87, supra, has not been violated. The only offense committed is that of failure to repair, absence without leave, or desertion with intent to avoid hazardous duty or to shirk important service, depending upon the nature of the military operation involved. Were a commander limited to a selection of one of these extremes, he would be required to charge either a very minor offense, thereby failing to satisfy the requirements of military discipline, or, to charge a much more serious offense requiring the establishment of a specific intent, thereby destroying the purpose of the Article, namely, the punishment of missing movement—an offense greater than mere absence without leave, and less than desertion. It should be abundantly clear that the purpose of the Uniform Code of Military Justice is not to destroy military discipline, or to make its dictates unduly severe. Its purpose is the improvement of military discipline by the melioration

serious offense in light of the manning of positions aboard seagoing vessels. This experience apparently is reflected in one of the early commentaries on the Uniform Code. *See* J. Snedeker, *Military Justice Under the Uniform Code* 584–85, Sec. 2804e (1953). The author related the missed movement by the accused to the movement of a unit to which he is assigned.

> The limits of the movement contemplated in this offense are not to be measured by the boundaries beyond which the accused cannot go without being absent without leave; he can be absent without leave from his unit by virtue of his failing to go to the appointed place of a unit departure at the departure time prescribed and still not be guilty of missing movement because of the minor change of location being made by the unit.

We believe, to the contrary, that Congress intended a more expansive definition of the offense. The language of the Article goes beyond that of the offense referred to in Naval Courts and Boards, *supra*. In addition, Congress did not adopt the limitations on the Article proposed by Colonel John P. Oliver, Legislative Counsel of the Reserve Officers Association of the United States, which would have made the Article apply only "to overseas shipments or movements into combat." *Index and Legislative History, supra* at 760. In sum, we believe that Congress intended Article 87 to include the very sort of conduct now before us.

of the administration of justice in the armed services.

*Id.* at 177, 11 C.M.R. at 177. We conclude that such logic has continued vitality.[4]

■ At the time of the enactment of the Uniform Code of Military Justice, the more common practice was to move personnel as part of larger units, as was done in World War II. However, even then, it was not unknown for individuals to proceed overseas on troopships to provide replacements for depleted units, when returning from emergency leave or from convalescence in the United States. Since the Vietnam conflict at least, it has been the practice to move personnel as individuals and leave units in place. This practice is particularly prevalent in peacetime.

The rationale for the choice of "ship" and "aircraft" in Article 87 is apparent. Congress contemplated that these methods of transportation would be employed for long distance troop movements, and the disruption to military operations because of a failure to move aboard a ship or an aircraft would be greater than the failure to move on a truck or car. Indeed, transport of troops by car, bus, or truck usually would be of such a short distance as to fall outside the meaning of "movement," unless an entire "unit" was moving. If an individual fails to appear, the service may have to pay for the unfilled seat and, what is worse, another person waiting for similar transportation may be deprived of the opportunity to travel at that time. Additionally, the arrangements at the point of arrival will be frustrated by the person's failure to arrive at the specific time. The unit vacancy to which he is assigned will have to be filled by someone else until the matter is resolved. Consequently, the effects that follow such a delict go beyond a mere failure to go to a place of duty, and such conduct merits more punishment than would be appropriate had the vehicle involved been only a truck or car.

Of course, such reasoning would not necessarily apply in the situation where the serviceperson is merely given a commercial transportation request and told to report at some time in the future. In such case, the gravamen of the failure to report is not necessarily related to the missing movement and lies more properly within the area of absence without leave.

However, when a serviceperson is ordered to move aboard a specific aircraft or ship, military or chartered, and, through design or neglect, fails to move with that aircraft or ship, Article 87 is violated. The extent of the foreseeable disruption caused in the particular case is, of course, a matter of aggravation or mitigation.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

FLETCHER, Judge (dissenting):

I am unable to concur with the majority's disposition of this case inasmuch as I conclude that their reasoning is not founded on strong authority or logic. It is apparent from the quoted legislative history that Article 87, Uniform Code of Military Justice, 10 U.S.C. § 887, was enacted to circumvent an apparently common experience of illegitimate absence at the moment a unit or ship was about to move. This article was an attempt to decrease the incidence of this misconduct by a specific sanction providing an increased penalty. Careful reading of the legislative history strongly suggests a logically necessary connection between the missing movement and the operational purpose, effectiveness, and efficiency of the mission.

The majority opinion troubles me most in its lack of reflection regarding this necessary nexus. We are told that when the words of a statute are clear, a court has no right to impose another meaning. Yet the majority is clearly selective in focusing on

---

**4.** *It should be noted that in the 30 years since this Court's decision in United States v. Johnson,* 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953), Congress has expressed no disagreement with our interpretation, even though it has revised the Code in other respects. *See also United States v. Washington,* 1 M.J. 473, 475 n. 6 (C.M.A.1976).

the word "movement" and broadly reading this to mean any order "to move aboard a specific aircraft or ship, military or chartered." 16 M.J. 460, 461. This is precisely the problem, I believe, with *United States v. Johnson,* 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953), which erroneously centers its rationale on the phrase "misses the movement," to the exclusion of the remainder of the statutory language. Both the majority here and in *Johnson* overlook the intent of the framers of the Code.

The principal authority for the majority's holding today seems to be their satisfaction with the *Johnson* rationale affirming application of Article 87 to those facts. I have grave reservations with that case's central presumption that to hold otherwise is to limit a commander's discretion to charging a minor offense (failure to repair) or a major offense (desertion). The purpose of statutory interpretation is to follow the clear intention of the legislative branch, not to save military discipline.[1]

Buttressing the majority's argument is the observation that since the Vietnam con-

flict, military practice has retained units in place with movement principally being that of individuals. Therefore, we are instructed that Article 87 should now be applied to mere individual orders to move to other units.[2] Thus, to do otherwise, it is argued, would result in wastefully unfilled Military Airlift Command (MAC) flights and unit vacancies. This may well be, but to employ this kind of argument in statutory analysis is superfluous.

As a matter of law, I am compelled to conclude that the doctrine of *United States v. Johnson, supra,* is overly broad, and that the majority is incorrect in their view of Article 87. If the logically necessary connection between the serviceperson's conduct and the operational purpose, effectiveness, and efficiency of the mission is removed, then the basis for application of increased punishment under Article 87 is removed. This is the most logical interpretation and is supported by the legislative history.[3]

In the instant case, appellant was traveling alone pursuant to permanent change of

---

1. Unlike the majority, I am unable to transmute congressional inaction in the 30 years following *United States v. Johnson,* 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953), into positive law.

2. *Compare* James Snedeker's analysis, in his 1953 Commentary on the Code, of the movement required by Article 87, Uniform Code of Military Justice, 10 U.S.C. § 887:

   The movement of the ship, aircraft, or unit, the missing of which constitutes the gist of this offense, must be a material change of location of the ship, aircraft, or unit. The shifting of a ship from one berth or dock to another berth or dock in the same harbor or shipyard, or in the immediate vicinity, as from a Honolulu dock to a Pearl Harbor berth, or from a Mare Island drydock to a San Francisco berth, would not constitute such a movement. The change of location of aircraft from one airfield to another in the same vicinity, or a unit from one barracks to another on the same post or on a military reservation which included more than one post, is not the type of movement contemplated. A practice march of short duration which is planned so as to begin and end at substantially the same location is not a movement. The mission of a truck or bus or train with which a person is required in the course of duty to move will not make him

guilty of this offense unless the unit to which he belongs or to which he has been assigned or ordered is required to so move. The limits of the movement contemplated in this offense are not to be measured by the boundaries beyond which the accused cannot go without being absent without leave; he can be absent without leave from his unit by virtue of his failing to go to the appointed place of a unit departure at the departure time prescribed and still not be guilty of missing movement because of the minor change of location being made by the unit. J. Snedeker, *Military Justice Under the Uniform Code* 584–85, § 2804e (1953) (footnote omitted).

3. Furthermore, there is secondary authority for this view. James Snedeker indicates that one of the essential elements of the offense is "[t]hat a scheduled movement of a ship, aircraft, or unit actually occurred." Snedeker, *supra* at 584. The clear implication of this analysis is that missing movement is an aggravated form of absence without leave which is more serious than the norm. The present statute derives its being from an earlier offense punishable in the Navy for missing a ship's movement; that is, a mobile transferral of the military unit of which the individual was an integral and necessary part. *See Snedeker, supra* at 583.

duty orders. Other than his obligation to make the port call, he was otherwise on leave, and had no obligation to report to his new station for more than thirty days. He was not assigned to the aircraft or any unit therein, and the Government has shown no substantial disruption of any unit. In line with the legislative intent on record, the doctrine of *Johnson* should be limited in applicability to movement with the potential of disruption or frustration of significant military missions.

I would reverse the decision below as to the charge of missing movement and the sentence, set aside the findings of guilty of said charge, dismiss that charge, and order a rehearing on sentence.