**UNITED STATES**

v.

**Airman First Class David K. KAPPLE, FR544–15–2384, United States Air. Force.**

**ACM S28494.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 12 March 1991.

Decided 2 April 1993.

---

5. Appellant's remaining assertions of error are    therefore moot.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens, Major George P. Clark, and Major Beverly B. Knott.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., Major Jeffrey C. Lindquist, and Captain James B. Wager, Jr.

Before McLAUTHLIN, KEAN, CONNELLY, and STUCKY, Appellate Military Judges.

## OPINION OF THE COURT

STUCKY, Judge:

Contrary to his pleas, Airman First Class David K. Kapple was convicted by a special court-martial consisting of a military judge sitting alone, of one specification of missing movement in violation of Article 87 of the UCMJ, 10 U.S.C. § 887.[1] He was sentenced to a bad-conduct discharge, 2 months confinement, forfeiture of $500 pay per month for 2 months, and reduction to E–1. The convening authority approved the sentence as adjudged.

---

1. Kapple was charged with missing movement by design. The military judge instead found him guilty of missing movement by neglect, a less aggravated form of the offense.

On appeal, Kapple asserts three errors. First, he argues that the evidence is legally and factually insufficient to prove that he missed a movement. Second, he claims that the government did not prove that the defense of inability did not exist. Finally, he argues that a punitive discharge is inappropriately severe.

The appellant was a security policeman stationed at RAF Greenham Common, England. In late 1990, he received permanent change of station orders to Sembach Air Base (AB), Germany. The appellant took 35 days of leave at his home in Oregon incident to his permanent change of station (PCS). He was to report at Sembach AB not later than 31 December 1990. To accomplish this, he was to fly from Portland, Oregon, to London on 26 December 1990. He had a port call and a ticket on Lufthansa Flight 1605 from London's Heathrow Airport to Frankfurt at 1000 on 27 December 1990. It is undisputed that the appellant did not get to Sembach AB. He claimed that bad weather and the wreck of his wife's car delayed him until 31 December, when he "chose not to report to Sembach," and turned himself in at McChord Air Force Base, Washington, claiming to be a conscientious objector. He was convicted of missing movement of the 27 December 1990 Lufthansa Airlines Flight 1605 (LH 1605).

## I

The appellant's first contention is that the evidence is legally and factually insufficient to prove beyond a reasonable doubt that he missed the movement, since there was no evidence that LH 1605 actually "moved", or flew on the date alleged. Indeed, no such evidence appears to have been before the court. There was evidence that the appellant had a port call on LH 1605 on 27 December 1990, and knew of it. There was also evidence that a reservation had been made for him, and a ticket secured, on that flight. However, nothing in the record indicates that LH 1605 actually flew from Heathrow to Frankfurt on the date alleged.

Missing movement is an offense with a recent yet somewhat murky history. Unknown to the Articles of War, it was enacted in the UCMJ as an aggravated form of absence without leave to deal with personnel who were legitimately on leave but who returned to their units or ships after they had moved or sailed. *United States v. Graham*, 16 M.J. 460 (C.M.A.1983); *United States v. Johnson*, 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953). This Court originally took a restrictive view of this Article, holding that the movement of individual members by commercial aircraft was not a violation, since no "unit" moved. *United States v. Jackson*, 5 C.M.R. 429 (A.F.B.R. 1952). However, the Court of Military Appeals held early that assignment to the crew of military aircraft was not an essential element of missing the movement of that aircraft, if one were required to move with it. *Johnson*, 11 C.M.R. at 177–178.

Even after *Johnson*, this Court continued to view Article 87 narrowly, holding that there had to be an "urgency of the movement or ... an essential mission" to constitute an offense where, as here, the appellant could take a later flight and still report in accordance with his orders. *United States v. Gillchrest*, 50 C.M.R. 832 (A.F.C.M.R.1975). This approach was criticized by other services' courts. *See United States v. Blair*, 24 M.J. 879 (A.C.M.R.1987), *aff'd*, 27 M.J. 438 (C.M.A.1988); *United States v. St. Ann*, 6 M.J. 563 (N.C.M.R. 1978). In *Graham*, the Court of Military Appeals held that where an individual misses the movement of an aircraft, military or chartered, Article 87 is violated. However, that Court left open the possibility that an individual who was simply given a commercial ticket and ordered to report at some time in the future did not miss a movement by missing that flight. *See also United States v. Gibson*, 17 M.J. 143 (C.M.A.1984). The death knell for the "urgent or essential" requirement in the Air Force was *United States v. Stroud*, 27 M.J. 765 (A.F.C.M.R.1988), in which we adopted the reasoning of the Army Court in *Blair, supra*, that (1) there is no meaningful Article 87 distinction among military, chartered, and commercial flights when the military

provides seats on specific flights and orders its personnel to board them for PCS travel; and (2) the urgency or essentiality of the mission in question is not a circumstance going to the commission of the offense, but rather a matter in mitigation or aggravation.

In light of this analysis, the appellant's actions constituted missing movement under Article 87 unless, as he claims, the movement taking place is an essential element of the offense and therefore must be proven beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). In the context of an individual movement, this appears to be a case of first impression. An early Navy case, *United States v. Davies*, 13 C.M.R. 577 (N.B.R.1953), held that proof of movement was an essential element, but this was in relation to a total unit move. Although the question is a novel one, we do not see it as being "piled high with difficulty." [2] The essential elements of missing movement under Article 87 are found in the Manual for Courts–Martial (1984), at paragraph 11b. They are:

(1) That the accused was required in the course of duty to move with a ship, aircraft or unit;

(2) That the accused knew of the prospective movement of the ship, aircraft or unit;

(3) That the accused missed the movement of the ship, aircraft or unit; and

(4) That the accused missed the movement through design or neglect.

◼ Provisions of the *Manual* are subject to the ordinary rules of statutory construction. If unambiguous, they are to be given their plain meaning, at least in the absence of evidence of contrary Executive intent. *United States v. Lucas*, 1 U.S.C.M.A. 19, 1 C.M.R. 19, 22 (1951). Here, the third element is that the accused "missed the movement" of the ship, aircraft, or unit. It seems quite clear that proof of such a movement's taking place is an essential part of that element—if no movement took place, there is nothing to miss. Early cases under Article 87 reflect

evidence of record that the movement in question did in fact take place. *See Johnson*, 11 C.M.R. at 176–177; *United States v. Thompson*, 2 U.S.C.M.A. 460, 9 C.M.R. 90 (1953); *United States v. Gallagher*, 15 C.M.R. 911 (A.F.B.R.1954). At least one commentator has opined explicitly that proof of the movement's taking place is essential. J. Snedeker, *Military Justice Under the Uniform Code* 583 (1953). *See also, Graham, supra* at 464–466 (Fletcher, J., dissenting). Finally, the present Manual appears to recognize the necessity for proof of the movement's taking place in paragraph 11c(6), where it states:

(6) Proof of absence. That the accused actually missed the movement may be proved by documentary evidences by a proper entry in a log or a morning report. *This fact may also be proved by the testimony of personnel of the ship, aircraft, or unit (or by other evidence) that the movement occurred at a certain time,* together with evidence that the accused was physically elsewhere at that time (emphasis added).

◼ We therefore hold that proof that the movement of the ship aircraft, or unit (as the case may be) actually took place is an essential element of the offense of missing movement under Article 87, and must be proven beyond a reasonable doubt in order for the findings of the court-martial to be legally sufficient. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *Turner, supra.*

The government urges us to recognize that the appellant said, in effect, "I am not flying to Germany", and that his failure to show up at Sembach AB on the required day constituted proof of intent to miss *any* movement. This argument has some appeal, particularly in the context of the preparation for combat operations which overshadowed all PCS movements in the theater concerned at the time, and of which we certainly could take judicial notice. *See United States v. Richardson*, 30 M.J. 1239 (A.F.C.M.R.1990). However, we must take the case as we find it, with the single

**2.** *Cf.* A. Lincoln, Second Annual Message to    Congress (1862).

charge and specification of missing a movement on a given day.

## II

█ The Government urges, if we find that the movement of LH 1605 is an essential element of the offense, that we infer from the facts proven that the flight did in fact fly. There was evidence that the appellant had a ticket on LH 1605 which gave him positive reserved space on that flight; that the flight was a regularly-scheduled commercial one between London's Heathrow Airport and Frankfurt, Germany; and that the appellant had actual knowledge of his required movement on the flight.

█ May the ultimate fact that the flight actually flew permissibly be inferred from these proven facts?[3] We believe that it may, under these circumstances. The test for a permissible inference is whether it "can ... be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969). *See also Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213 60 L.Ed.2d 777 (1979). While this test was originally formulated for statutory criminal inferences, the Court of Military Appeals has applied it to non-statutory ones as well. *United States v. Lyons*, 33 M.J. 88 (C.M.A. 1991). We believe that where the appellant (1) has a ticket entitling him to positive reserved space on a particular flight (or other medium of transportation), and (2) that flight (or other medium) is a regularly-scheduled commercial one, the actual movement of the flight may be permissibly inferred. An appellant may rebut any such inference by showing facts—especially those particularly within his knowledge, such as unusual weather conditions or the manifest unreliability of a particular air carrier—which repel or undercut it. *United States v. Thompson*, 3 U.S.C.M.A. 620, 14 C.M.R. 38 (1954). However, we hold that the facts proven do permit the inference that LH 1605 actually flew, and hence that that essential element of the offense of missing movement was proven.[4]

## III

█ The appellant next argues that the Government failed to prove beyond a reasonable doubt that a defense of inability did not exist. Physical inability to move with a ship or aircraft is an affirmative defense to a charge of missing movement. When such a defense is raised, the prosecution must prove beyond a reasonable doubt that the defense did not exist. *United States v. Mills*, 17 C.M.R. 480 (N.B.R.1954); R.C.M. 916(b). The standard for inability is an objective one; an appellant's personal opinion that physical inability existed is insufficient unless that opinion is reasonable under the circumstances. R.C.M. 916(i). Here, the appellant claimed that bad weather and an automobile wreck prevented his getting from his home in Oregon to the Portland airport, and hence by extension to LH 1605. Unfortunately for the appellant, we do not find that the defense of inability was raised by the evidence presented at trial. A stipulation of fact containing National Weather Service reports from 21 through 31 December 1990 showed that there was freezing rain in Portland on 26 December, the day he was scheduled to fly out. Only .01 inch of rain is mentioned in Salem, the station closest to his home, however, and the high was 43 degrees fahrenheit—well above freezing. The previous day there was a trace of rain with a high of 36 degrees fahrenheit in Salem, and no rain and clear though cold (25 degrees fahrenheit) conditions in Portland. The appellant

---

3. We specified this issue for additional briefing, and found the briefs of appellate counsel for both the appellant and the government to be of assistance in resolving the question.

4. Our holding is limited to regularly-scheduled commercial flights, ship sailings, trains, and the like. We do not decide whether such an inference may be applied in military or civilian charters or other transportation which is less regular than ordinary scheduled service. We urge trial counsel to offer evidence of the actual movement in question in cases arising under Article 87, except when substantial difficulties of proof require reliance upon this inference.

testified that he was in a car accident on 25 December, but he was not injured, and no showing of the unavailability of alternate transportation was made.

 The defense of inability has been construed rather strictly by this and other courts. Essentially, it is available only when, as a practical matter, the absence was "for a reason which was out of the accused's hands." *United States v. Lee*, 16 M.J. 278, 280 (C.M.A.1983). While a natural disaster may give rise to it, it is not available where the disaster was foreseeable. *Id.* Likewise, a situation which may arguably initially present the defense will change if the appellant exerts insufficient effort to overcome the disability. *United States v. Bermudez*, 47 C.M.R. 68 (A.F.C.M.R.1973), *pet. denied*, 48 C.M.R. 999 (C.M.A.1973); *United States v. Lee*, 14 M.J. 633 (A.C.M.R.1982), *rev'd on other grounds*, 16 M.J. 278 (C.M.A.1983); *United States v. Kessinger*, 9 C.M.R. 261 (A.B.R. 1952).

Here, the appellant had lived in Oregon all his life, and presumably knew the vagaries of its winter weather. Yet he did nothing to ensure his timely arrival in Portland, electing instead to remain passively at his parents' house. He did not seek out alternate methods of transportation, if, indeed, such methods were necessary, and raised no issue of their unavailability. Indeed, it appears clear that this ultimate intention was never to report—in his statement he wrote "I chose not to report to Sembach." Instead, he drove to McChord AFB (which was much further from his home than Portland), and announced that he was a conscientious objector. Since, in our opinion, the evidence presented was insufficient to raise the defense of inability, there was nothing for the Government to disprove.

## IV

 The appellant's final contention is that a punitive discharge is inappropriately severe, in view of his previous clear record and the lack of any demonstrated impact of his absence on his unit. We disagree. The appellant missed the movement of LH 1605 to an assignment in Europe at a time when the situation in the Persian Gulf was reaching the crisis stage. His absence patently and foreseeably affected military efficiency and operations, since, as a security policeman, he performed a duty vital in wartime. A punitive discharge is entirely appropriate. Article 66(c), UCMJ; *Stroud*, 27 M.J. 765; *Blair*, 24 M.J. 879.

The findings and sentence are AFFIRMED.

Senior Judge McLAUTHLIN, Judges KEAN and CONNELLY concur.