UNITED STATES, Appellee

v

GUILLERMO E. CALPITO, Stewardsman, U. S. Navy, Appellant

18 USCMA 450, 40 CMR 162

*Commander E. M. Fulton, Jr.,* JAGC, USN, was on the pleadings for Appellant, Accused.

*Lieutenant Colonel Charles J. Keever,* USMC, was on the pleadings for Appellee, United States.

## Opinion of the Court

PER CURIAM:

The accused pleaded guilty before a special court-martial to being absent without leave from his unit "Heavy Attack Squadron TEN, located at U. S. Naval Air Station, Whidbey Island, Washington," in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He was sentenced to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $97.00 per month for a like period, and reduction. Intermediate appellate authorities have affirmed the findings and sentence without change. We granted review to determine whether the accused, by his testimony in extenuation and mitigation, compromised his plea.

The situation is perhaps best and most simply explained by the following quotation from the review of the Staff Judge Advocate to the officer exercising general court-martial jurisdiction:

"In his sworn statement in mitigation and extenuation, the accused revealed that he came to the Philippines on a 30-day leave from the U. S. Naval Air Station, Whidbey Island, Washington. This leave was extended for 20 more days. After the expiration of his leave on 4 April 1968, he reported to Clark Air Base for his flight back to his command. However, when it was discovered that he did not have a passport, he was told to report to the Receiving Station in Subic Bay which he did. On 8 April 1968, he was sent back to Clark to get on a flight for his command. After waiting for five or six hours for his flight, he was again told that he could not get back to the United States without a passport. He then went to Baguio for the purpose of getting some money to enable him to go to Manila and obtain a passport.

"On the same day of his arrival in Baguio, he fell from the stairs and hurt his left knee. On 11 April 1968, he went to the Base Hospital at John Hay Air Base where his knee was x-rayed and then put in a cast. He instructed his wife to send a telegram to his commanding officer. On 20 April 1968, he received a reply telegram from his ship ordering him to report to Clark Air Base immediately. On 23 April 1968, he returned to Clark Air Base and showed the telegram from his ship. The air force personnel at Clark insisted that he should have a passport to leave the country. Upset, he returned to Baguio.

"The accused revealed that when he applied for a passport at the Foreign Affairs Office in Manila, he was told to get a certification that he is attached to his command from his commanding officer. The telegram from his ship was not honored. He felt that it was impossible to get the required certification unless he went to the United States to get it.

"Financial difficulties, marital conflict over his in-laws, and damaged roads were other reasons presented for the accused's prolonged

absence. He stated that he did not have the money to pay for his fare in coming down from Baguio to turn himself in after failing to get through Clark for the third time. He found that his wife did not have any deposit in the bank and owed people money although she had been receiving $145.00 a month in allotments. His wife admitted to him giving their money to her parents and sending her brothers and sisters to school. After finding out that his two children were not receiving the care and attention they deserved, he told his wife to live apart from her family.

"The rainy season came in May and June, and the roads going up to Baguio were damaged by the typhoons and took two months to repair. In August, his wife's allotment stopped which aggravated their financial difficulties. He stated that he was not employed during the period of this absence."

The above-mentioned telegram to the accused from his ship was placed in evidence as Defense Exhibit A. It reflects, in pertinent part, the following data:

"A. TELEGRAM FROM CALPITO DATED 16 APRIL 68 (NOTAL)

"B. BOUPERS MAN ART C6203(3)

"1. TN CALPITO A PHILIPPINE NATIONAL WAS GRANTED EMERGENCY LEAVE FROM HEAVY ATTACK SQUADRON TEN ON 14 FEB 68 LEAVE ADDRESS IS 108 FISH MARKET BAGUIO CITY PHILIPPINES.

"2. TN CALPITO REPORTED NS SUBIC FOR TRANSPORTATION TO NAS WHIDBEY AND WAS REFUSED PASSAGE AT CLARK AFB BECAUSE HE HAD NO PASSPORT REF A APPLIES PASSPORT NOT REQD FOR SERVICE MEMBER ON EMERGENCY LV IAW REF B.

"3. ATTN CALPITO: REPORT CLARK WITH THIS MESSAGE AS SOON AS POSSIBLE.

"4. ATTN CLARK AFB: REQUEST ASSIST TN CALPITO IN RETURNING."

It is at once apparent that when the accused reported to Clark Air Force Base and presented his telegram, he was following the orders of his commanding officer. Despite the statement in the telegram that he did not need a passport, and the direction therein that Clark Air Force Base was to assist him in returning to his station, he was again refused transportation. The basis for the refusal—lack of a passport—was the same reason given for denial of transportation when he reported on the day his leave originally expired.

In all, it is unrebutted that the accused on three separate occasions reported to Clark Air Force Base for transportation to the United States. Each time he was told he needed a passport and was sent to the Receiving Station, Subic Bay, to get one. At Subic Bay he was informed that none was needed and that he should return to Clark. When he went to Manila to get a passport from the civilian authorities, he was advised that a certification of attachment to a particular unit, signed by his commanding officer, was required. This he could not get without returning to the United States—the very thing he was attempting to accomplish.

Appellate defense counsel claims that at all times the accused was attempting to comply with orders but was prevented from doing so. The Government theory seems to be that Calpito should have again reported to Subic Bay and turned himself in; that his failure to do so constituted an unauthorized absence.

We need not make a determination of what the accused should have done. It is enough to note that we agree his initial, extensive efforts to return were frustrated by official error and inaction. There is simply no explanation for the failure of Air Force personnel to comply with the request of the accused's commanding officer that they facilitate his return, as evidenced by the telegram.

The record contains more than enough evidence to raise an issue, requiring a determination by the mem-

bers of the court, as to whether the accused had a defense to the charge of being absent without leave. United States v Pinkston, 18 USCMA 261, 39 CMR 261. At the very least, his testimony and the supporting evidence was inconsistent with his plea, and the plea should have been rejected. United States v Vance, 17 USCMA 444, 38 CMR 242.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.