**UNITED STATES, Appellee,**

v.

**Donald L. LEE, Private First Class, U.S. Army, Appellant.**

No. 43,493.
SPCM 16346.

U.S. Court of Military Appeals.

Sept. 6, 1983.

For Appellant: *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire II, Major Lawrence F. Klar, Captain Edmund S. Bloom* (on brief); *Colonel Ed-*

ward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Captain Joseph A. Russelburg.

For Appellee: *Lieutenant Colonel John T. Edwards, Captain Thomas E. Booth, Captain Peter M. Donawick* (on brief); *Colonel R.R. Boller, Major Michael L. DeBusk.*

### Opinion of the Court

PER CURIAM:

Pursuant to pleas of guilty, a military judge sitting as a special court-martial convicted appellant of two unauthorized absences—one from November 14 to December 31, 1980, and the other from 0400 hours on January 26 to 2015 hours on January 27, 1981—in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. Appellant was sentenced to a bad-conduct discharge, forfeiture of $100 pay per month for 3 months, and reduction to the lowest enlisted grade. The convening authority approved these results; and the United States Army Court of Military Review, over Judge Garn's dissent, affirmed. 14 M.J. 633 (1982).

Upon appellant's petition, this Court granted review of his contention, unsuccessfully urged in the intermediate court, that his plea of guilty to the brief second absence was improvident because his sworn testimony in extenuation and mitigation raised the defense of impossibility to return to military control, and that the potential inconsistency with his plea was not further inquired into and resolved by the military judge. 14 M.J. 167 (1982). We agree.

During the providence inquiry into appellant's tendered pleas of guilty, appellant admitted that he had been absent without authority from 0400 hours on January 26 until 2015 hours on January 27, 1981; that he was in Richmond Hill, Georgia; that he "knew that ... [he] had no authority to leave ... [his] unit"; and that he was "satisfied ... that ... [he] had no legal justification or excuse for ... [the] absence." He acknowledged that he understood the elements of this offense and that the specification accurately reflected his conduct. He further stated that he had

discussed his pleas with his defense counsel. Based upon this inquiry the military judge correctly accepted the pleas as provident and entered findings of guilty accordingly.

However, in the presentencing phase of his trial, appellant explained under oath the circumstances leading up to each unauthorized absence. The following colloquy occurred between appellant and his defense counsel relative to the second absence:

Q. Now you've already pled guilty to being gone at 0400 hours on the 26th of January, until approximately 2015 hours on the 27th of January. Can you explain to the Judge what circumstances were behind your absence in that case?

A. Sir, on that particular date, at the time I owned a 1969 Chrysler New Yorker, and I went out to get ready to come to work on the prescribed date and I had mechanical problems with my automobile. I called into base and they told me to get to base the best way I could, and I tried my best to make some kind of arrangements to come to base but I could not get a hold of anybody to where I could get transportation to the base, sir.

Q. And you were residing where at the time?

A. Richmond Hill, sir, on Pine Hill Road, Route 1.

Q. Is that the residence that you had with your family?

A. No, sir.

Q. It's a different residence?

A. Yes, sir.

Q. Okay. And so you had difficulty obtaining a ride in or whatever? How did you finally get in?

A. The landlord that I had down there, sir, I got a hold of him late that evening and he brought me up to base, sir.

Q. And that was—where did you go when you came up to the base?

A. I reported in to my Orderly Room, to the Sergeant that was in the Operation Room, who was controlling the—monitoring the radio frequency for the aircraft that we have [in] the unit. And therefore he contacted the First Sergeant and my NCOIC from the Dining Facility.

Q. Did you tell him at that time that you were absent without leave?

A. Yes, I did.

Q. What if anything have you done to attempt to remedy your transportation problems which you encountered as a result of that AWOL?

A. I made arrangements with Buck Sergeant Hypes, one of the cooks in the Dining Facility—he's also in the same unit as I am—that—we made an agreement whenever either one of us had automobile problems, we made arrangements to contact each other and each of us would take turns picking each other up and providing transportation when transportation—some mechanical failure or problem beyond our control on our transportation, sir.

Without inquiring further into the circumstances surrounding this absence, the military judge proceeded to impose the sentence indicated.

Article 45(a) of the Code, 10 U.S.C. § 845(a), prescribes:

If an accused after arraignment makes an irregular pleading, or *after a plea of guilty sets up matter inconsistent with the plea,* or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of *its* meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.

(Emphasis added). To ensure full compliance with the intent of Article 45 that a guilty plea be knowing and voluntary, this Court has required that before a military judge accepts an accused's guilty plea, he conduct an inquiry wherein he must advise the accused of certain rights which his plea would waive and of the elements of the offense to which he has tendered his plea. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

■ Additionally, the inquiry must elicit from the accused the facts and circumstances surrounding the act charged in order to establish a factual basis for the judge's

finding that the accused is, in fact, guilty, as he has pleaded. *United States v. Davenport,* 9 M.J. 364 (C.M.A.1980). However, if at some time during the proceedings the accused sets up matters which are inconsistent with the facts stated in support of his proffered plea of guilty, then the plea must be rejected. Article 45, 10 U.S.C. § 845, *supra; United States v. Davenport, supra; United States v. Moglia,* 3 M.J. 216 (C.M.A. 1977).

Where [an] inconsistent matter is set up, the judge has the duty to inquire into the circumstances and, if the accused persists in his statements, to reject the plea. *United States v. Thompson,* 21 U.S.C.M.A. 526, 527, 45 C.M.R. 300, 301 (1972).

As the Court of Military Review recognized in this case, the defense of impossibility has long been available in some instances to shield an accused who fails to return from authorized leave against a charge of unauthorized absence. 14 M.J. at 634. *See* W. Winthrop, *Military Law and Precedents* 608 (2d ed. 1920 reprint); A. Avins, *The Law of AWOL* 141–182 (1957). According to paragraph 165 of the Manual for Courts-Martial, United States, 1969 (Revised edition), "When . . . a man on authorized leave is unable to return at the expiration thereof through no fault of his own, he has not committed the offense of absence without leave, there being an excuse for the absence in such a case."

■ In analyzing the facts surrounding a failure to return from an authorized absence, the phrase in the Manual provision "through no fault of his own" should not be treated lightly. The courts have rather strictly construed the defense of impossibility to include only those cases in which the absence truly was, as a practical matter, for a reason which was out of the accused's hands. While it might well apply to situations involving illness or injury (*United States v. Amie,* 7 U.S.C.M.A. 514, 22 C.M.R. 304 (1957)), natural disasters, or the intervention of third parties (*United States v. Calpito,* 18 U.S.C.M.A. 450, 40 C.M.R. 162 (1969)), it may not be available even in those situations where, for instance, the ill-

ness or injury was self-induced (*United States v. Irving,* 2 M.J. 967 (A.C.M.R.1976), *pet. denied,* 2 M.J. 197 (C.M.A.1977)), the natural disaster or occurrence was foreseeable, or the intervention by third parties was caused by the accused's fault (*United States v. Myhre,* 9 U.S.C.M.A. 32, 25 C.M.R. 294 (1958)). Even when the defense might have been available initially, it can be defeated by a showing that the accused exerted insufficient effort to overcome the disability, *United States v. Bermudez,* 47 C.M.R. 68 (A.F.C.M.R.), *pet. denied,* 22 U.S.C.M.A. 631, 48 C.M.R. 999 (1973). Indeed, just such a situation was presented in a case similar in many ways to this one. In *United States v. Kessinger,* 9 C.M.R. 261 (A.B.R.1952), the Board of Review held that, where the accused's car broke down while he was returning from a weekend pass and he elected to stay with the car until it was repaired, the defense of impossibility was not available to him, since the decision to stay with the car was made for "his own convenience." *Id.* at 268.

The problem in the present case is that the military judge's omission to recognize the possible defense raised by the accused's presentencing testimony and to inquire further into the circumstances surrounding the absence leaves a record which is inadequately developed for the purpose of concluding whether the appellant's failure to return was truly "through no fault of his own." Certainly, however, this possibility cannot be excluded. Appellant testified that, as he was preparing to drive to his base, he developed car trouble which precluded his doing so; that he telephoned the base and was "told ... to get to [the] base the best way ... [he] could"; that he "tried ... [his] best to make some kind of arrangements to come to base but ... could not get a hold of anybody to" help him—not surprising in light of the time of day; that

he finally received some help "late that evening"[1] from his landlord, who brought him to the base; and that subsequently he had taken steps to ensure that similar transportation problems would not preclude his timely reporting for duty again.

The majority opinion in the court below seems to have mistakenly viewed the issue to be whether appellant had raised a defense of impossibility which was plausible or credible. However, in deciding a providence issue, the sole question is whether appellant made a statement during the trial which was in conflict with his guilty plea. It is unnecessary that his statement be credible; instead, it only need be inconsistent.

If we accept appellant's unretracted testimony "at face value, as we must in determining the providence of his [guilty] plea," *United States v. Jemmings,* 1 M.J. 414, 418 (C.M.A.1976), it unquestionably conflicted with his earlier statements prior to findings and, indeed, sufficed to raise the defense of impossibility. As Judge Garn commented in his dissenting opinion:

Finally, the majority concludes that the appellant was at fault either because he lived "an unreasonable distance away or he made no legitimate effort to get substitute transportation." The latter alternative basis was negated by the appellant's unrebutted testimony. The majority's implication that a soldier who doesn't get from his residence to his place of duty at the time prescribed because his car won't start is guilty of the crime of unauthorized absence practically ignores the concept of fault. The Army encourages married persons with families to serve. The Army is unable to provide residences for many soldiers with families. Those soldiers must find affordable housing

---

1. Although appellant was charged with being absent from the early morning hours of January 26 until the evening hours of January 27, and although neither appellant nor his defense counsel made any mention of the possibility that the termination date might be incorrect, some confusion is created by this remark which seems to imply that appellant made his

way back to base late on the evening of January 26. This ambiguity disturbed the dissenting judge below, *see United States v. Lee,* 14 M.J. 633, 635 and 636 (A.C.M.R.1982) (Garn, J. dissenting). However, in light of our disposition of this specification, no further discussion of it is necessary.

wherever they can and make their own arrangements for transportation between their homes and places of duty. Unless they have the rare good fortune of having access to public transportation, usually they must drive their own cars from their homes to their places of duty. Cars sometimes malfunction unexpectedly. To hold a soldier criminally liable because he doesn't have an alternate means to insure that he can get to his place of duty on time when his car is unexpectedly inoperable is unrealistic, unreasonable, and disturbing.

14 M.J. at 636.

When appellant made his inconsistent statement while testifying in mitigation, the military judge should have attempted to resolve the inconsistency. If a satisfactory resolution did not result, then he should have set aside the plea and finding of guilty as to the affected specification. *See, e.g., United States v. Jemmings, supra.* If a trial on the merits then had taken place as to this specification, the Government would

have had its opportunity to seek to overcome appellant's evidence.

Although we must now set aside the finding of guilty as to the second unauthorized absence because appellant's testimony was inconsistent with his guilty plea, *see United States v. Smith,* 14 M.J. 68, 71 (C.M.A.1982), we conclude that little could be gained in this case by authorizing a rehearing on this specification. Accordingly, in the interest of judicial economy, we will dismiss this specification.

The decision of the United States Army Court of Military Review is reversed as to specification 2 of the Charge and the sentence. The finding of guilty as to specification 2 is set aside and that specification is dismissed. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence on the basis of the remaining findings of guilty.