**UNITED STATES**

v.

**Staff Sergeant James E. FLANNIGAN, FR 466–02–0842, United States Air Force.**

**ACM 27052.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 3 May 1988.

Decided 27 July 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Carole W. Hanson and Captain Morris D. Davis.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

DECISION

KASTL, Senior Judge:

In this court-martial, the Government alleges that the appellant, an agent of the Office of Special Investigations (OSI), has "gone bad" and tarnished himself with "drugs, sex, and lies." The case involves the significant issue of whether the Air Force validly claimed the national security privilege under Mil.R.Evid. 505.

In spite of his pleas, Staff Sergeant Flannigan was convicted by a general court-martial consisting of members of dereliction of duty, wrongful use of marijuana, and adultery with LEJ, in violation of Articles 92, 112a, and 134, UCMJ, 10 U.S.C. §§ 892, 912a, 934. His approved sentence is a bad conduct discharge, confinement for

seven months, and reduction to the grade of E–2.

Flannigan was assigned to the OSI detachment at Lackland AFB, Texas; he was a probationary agent, recently graduated from the OSI Academy. Despite the fact that he had not attended undercover training courses, he was selected in July 1987 to perform an undercover narcotics and theft investigation at Tinker Air Force Base, Oklahoma. He enjoyed some initial success and was directed back to Tinker in August 1987, where he remained for about two weeks. It was for Flannigan's alleged misconduct during this two week timeframe that court-martial charges were brought.

### Dereliction of Duty

The pertinent portion of the Article 92 specification alleges that the appellant was:

> Derelict in the performance of his duties in that he willfully failed to avoid getting emotionally involved with, making sexual advances towards, and engaging in intimate physical contact with women, who were potential subjects or sources/targets for information, while in an undercover capacity, as it was his duty to do.

Mrs. J McG testified that she and Flannigan met in a night club. He later visited her privately and they engaged in a "French kiss"; the parties continued to kiss throughout the night "until daylight." Another time, the two went swimming at the apartment where Flannigan was staying. Both had consumed a substantial quantity of alcohol. They began to kiss and went into Flannigan's bedroom. Then, according to J McG, "we laid together there and petted and kissed," and the appellant attempted to have sexual relations with J McG. She "stopped him which he didn't pursue" and she then "fondled him

and he did the same to me...." Then, the parties "just kissed and petted intimately for a while" and fell asleep.

Although Flannigan was found guilty of adultery with another woman, LEJ, there is no adulterous relationship charged between Flannigan and J McG. Having said that, we find the evidence extremely close as to whether a dereliction of duty offense was proved at trial. It is manifest from the record that Flannigan had been counselled by other agents to behave himself with women who were subjects of OSI investigations. Details of the counsellings are amply spelled out in the record. However, other matters are not so clear. Was such guidance put to him simply as "fatherly advice"—the opinions of older, wiser OSI agents? Was it a mandatory standard he must follow? Or was it simply an exhortation to excellence contained in a non-punitive "OSI Code?" *See United States v. Causey,* 18 U.S.C.M.A. 282, 39 C.M.R. 282 (1969) and *United States v. Scott,* 22 U.S.C.M.A. 25, 467 C.M.R. 25 (1972). *See also* DiChiara, *Article 92: Judicial Guidelines for Identifying Punitive Orders and Regulations,* Air Force L.Rev. Vol. 17, No. 2 (Summer 1975) 61, 69–71.

Because of our disposition of the matter, we need not decide this difficult and close issue. However, we note that there are several evidentiary gaps which make it virtually impossible to determine whether the prosecution successfully proved a dereliction.[1]

### Classified Information—Mil.R.Evid. 505

■ The difficulty with the dereliction charge does not stop there. Appellant's civilian defense counsel moved to dismiss on the ground that the Government had failed to provide him Air Force OSI Regulation 124–68, *Undercover Guide* (21 April

---

1. Among the difficulties are whether the charged words "willfully failed to avoid getting emotionally involved" state part of an offense. *Acting* upon one's emotional feelings can be criminal; but by itself, we do not perceive that someone who "willfully failed to avoid getting emotionally involved with" another has committed a criminal act. We surmise that the alleged "wrong" would lie in some sort of failure to exercise sufficient will-power to avoid infatua-

tion. Yet lusty thoughts are not *per se* criminal. Furthermore, we find the evidence as to whether regulations prohibit an OSI agent from becoming involved with a *potential* subject or target—as opposed to a real one—insufficiently developed on the record. Neither was it shown whether, when a military subject is targeted (here, the sergeant-husband of J McG) his wife becomes a "potential subject" or "source/target for information."

1986), and Air Force OSI Pamphlet 124–51. Counsel ultimately gained access to Air Force OSI Regulation 124–68, but he was denied access to Air Force OSI Pamphlet 124–51 (number unclassified), the contents of which are classified "secret." The denial was predicated upon the prosecution asserting a claim of privilege under Mil.R. Evid. 505 by the "Commander of the Air Force OSI." The military judge held an *in camera* proceeding. He determined that: (1) the Mil.R.Evid. 505 privilege had been properly claimed; and (2) AFOSI Pamphlet 124–51 was irrelevant to defense of the case.

We hold that the military judged erred in finding the privilege validly invoked. Mil.R.Evid. 505(c) provides that the privilege may be claimed *by the head of the military department concerned,* based on a finding that the information is properly classified and that disclosure would be detrimental to national security. *See* Jackson, *This Court–Martial is Closed: The Clash Between the Constitution and National Security,* 30 Air Force L.Rev. 1, 4 (1989).

Authority of the witness or trial counsel to claim the privilege "is presumed in the absence of evidence to the contrary," according to Mil.R.Evid. 505(c). The Analysis of the Rule at Appendix 22, page A22–33, MCM 1984, provides that "neither a witness nor a trial counsel may claim the privilege *without prior direction to do so by the appropriate department or agency head*" (emphasis added).

Here, as best we can determine, the prosecution grounded the claim of privilege in part upon an affidavit by Colonel P, Commander of the AFOSI District at Randolph Air Force Base, Texas, introduced at trial as an appellate exhibit. The document, subscribed and sworn to, states that the Colonel had reviewed AFOSI Pamphlet 124–51 and "it is my opinion that AFOSI Pamphlet 124–51 contains classified information" and "is properly classified secret and its disclosure would be detrimental to National Security to the degree required to warrant its classification as secret under the applicable statute." *See* Mil.R.Evid.

505(i)(3). In the alternative, the assistant trial counsel stated on the record that "it is actually the commander of the Air Force OSI" who was claiming the privilege.

It is unclear who precisely was asserting the privilege on behalf of the United States. We find some support for presuming the Commander of the OSI in Washington, D.C. was claiming the privilege since the prosecution indicated they had "spoken to his SJA ... and the SJA has spoken to the commander...." We take judicial notice that the Commander of the OSI in Washington has a staff judge advocate assigned to his agency. We understand this was the only staff judge advocate then directly assigned to the OSI.

It matters not whether Colonel P or the Commander of the OSI sought to invoke the privilege. In either event, M.R.E. 505 requires *the head of the military department concerned* to make such a claim. Neither the Commander of AFOSI nor an OSI District Commander satisfies this definition. Moreover, the record is devoid of any evidence whatsoever to suggest that the trial counsel coordinated with the Secretary of the Air Force, as required by Mil.R.Evid. 505(c), or that the Secretary had delegated his authority to anyone within the OSI. *See United States v. Grunden,* 2 M.J. 116, 122 (C.M.A.1977).

The military judge made specific findings, as noted above, that the privilege had been validly claimed. In this, he erred. He also found that the document sought by the appellant was "not relevant" to the defense effort. As to this latter point, we reserve judgment. In any event, we conclude that the privilege was never claimed by one possessing authority to do so. *See* R.C.M. 806(a); *United States v. Bell,* 464 F.2d 667 (2d Cir.1972) (profile used to identify potential highjackers); *United States v. ex rel. Lloyd v. Vincent,* 520 F.2d 1272 (2d Cir.1975) (undercover officers who were still engaged in such operations at time of trial).

Disposition of the Various Offenses

■ From matters found elsewhere in the record, we are convinced beyond doubt that the appellant's assertions of error only

affect the dereliction of duty offense. We are satisfied with proof of the appellant's guilt as to the offenses of adultery with LEJ and wrongful use of marijuana. As to the latter offense, we disagree with the appellate defense contentions of instructional error; we are convinced that the instructions correctly guided the voting members as to each of the three explanations of his contact with marijuana offered by Flannigan.

As already indicated, Flannigan was properly convicted of adulterous conduct with LEJ and smoking marijuana. The approved sentence at this point is a bad conduct discharge, confinement for seven months, and reduction to pay grade E–2. We could remand the case for a rehearing as to the dereliction of duty allegation. This would require extensive relitigation, to include the possibility of asking the Secretary of the Air Force to determine whether national security should be invoked *vis-a-vis* Sergeant Flannigan's conduct. We have some serious doubts that trying an OSI agent for "petting" and "sleeping over"—apparently without coitus—will be of sufficient interest to cause the proper authority to invoke Mil.R.Evid. 505 on the ground that closure is essential to preserve national security. *See Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1983). *See also United States v. Grunden,* 2 M.J. at 120.

We believe that little of practical worth would be gained by authorizing a rehearing on this one specification. *See generally* Stafford, *"Secret Trials:" A Defense Perspective,* Army Lawyer, April 1988, p. 24. We deem it in the best interest of judicial economy to dismiss the dereliction of duty specification. *See United States v. Lee,* 16 M.J. 278, 282 (C.M.A.1983) and *United States v. Smith,* 27 M.J. 914, 919 (A.C.M.R. 1989).[2]

The other issues raised by the appellant, including those under *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982) are resolved adversely to the appellant.[3]

The finding of guilty of the specification of Charge I and of Charge I are set aside and the Charge and specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of these considerations and the entire record, we find appropriate only so much of the sentence as extends to a bad conduct discharge, reduction to the grade of E–3 and confinement for seven months.

The findings of guilty and the sentence, both as modified, are

AFFIRMED.

Senior Judge LEWIS and Judge BLOMMERS concur.

---

2. The case has been the subject of a torrent of motions from 13 September 1988 to date, mainly concerning its classified aspects. The Defense Motion for Oral Argument dated 18 May 1989, is DENIED.

3. Styling himself an "Amicus Applicant," appellant's trial level civilian defense counsel moved us to grant consideration of matters in the nature of an Article 38(c) 10 U.S.C. § 838(c) brief or Assignment of Errors. The request is opposed by the Government as untimely and cumulative. Civilian counsel's submission reached this Court on 24 July 1989. Well before that date, the opinion in appellant's case had been concurred in by the Panel; pre-publication proofreading and administrative tasks were all that was required before release of the opinion. Accordingly, civilian defense counsel's materials arrived too late for consideration; the motion to file same is DENIED. We note that the submission contains no new matter and that the same assertions were before the convening authority and addressed in the Staff Judge Advocate's Recommendations. In any event, the appellant can rest assured that all matters raised at his trial and in his *Crostefon* submission, 12 M.J. 431 (C.M.A.1982), have been carefully considered by this Court.