UNITED STATES, Appellee,

v.

Sergeant James G. SMITH, 439–41–2729, United States Army, Appellant.

ACMR 9100704.

U.S. Army Court of Military Review.

31 March 1992.

For Appellant: Colonel Robert B. Kirby, JAGC, Captain Robin N. Swope, JAGC, Captain Kurt J. Mayer, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Gregory T. Baldwin, JAGC (on brief).

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Pursuant to appellant's pleas, a military judge sitting as a special court-martial found appellant guilty of two specifications of absence without leave from his unit, one specification of failure to repair, and two specifications of missing movement by design, in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887 (1982) [hereinafter UCMJ]. Appellant was sentenced to a bad-conduct discharge, confinement for forty-five days, and reduction to Private E1. The sentence was within the terms of a pretrial agreement, and the convening authority approved it.

Appellant alleges that his pleas of guilty are improvident. We agree in part and will take corrective action.

The providence inquiry and other evidence of record reflect that appellant was a member of the Louisiana National Guard. His National Guard unit was designated to become a brigade of the 5th Infantry Division (Mechanized) in case of activation. In November 1990, appellant and his unit were activated in support of Operation Desert Shield. Appellant's term of enlistment was to expire on 10 December 1990. Because servicemembers were precluded from being discharged during this period, he was retained on active duty.

Appellant moved with his unit to Fort Hood for training. While at Fort Hood he was evaluated as having a "spur" on his knee. Consequently, he was returned to Fort Polk for evaluation and possible processing for discharge. At Fort Polk, he was medically reevaluated and no "spur" was found on his knee. It was determined that he met the standards for retention. As a result of this determination, he was ordered to return to Fort Hood on a shuttle van on 23 February 1991. At the shuttle van, on 23 February 1991, appellant refused to board the van because he did not have written orders. The noncommissioned officer in charge, after determining by telephone that written orders were not required, passed that information to appellant. Appellant did not board the van. This act resulted in one specification of missing movement. Appellant, without authority, then went to his home in Converse, Louisiana, and did not return to Fort Polk until 27 February 1991. This act resulted in a specification of absence without leave.

On 28 February 1991, appellant's rear detachment commander approved appellant's request to see a civilian doctor for examination of his knee.[1] Appellant's commander specifically told appellant he must return to the orderly room at 2300. Travel time from the doctor's office to Fort Polk was about two hours. At 2030, appellant called the charge of quarters (CQ) and told him to tell the rear detachment commander that he would not be back at 2300 and that he would be at the early morning formation. Appellant's failure to return was the basis for the failure to repair specification. During the providence inquiry, appellant explained that there was a delay in seeing the civilian doctor, and that because of a storm, he could not have made it back to his unit by 2300 and still have accomplished the personal business of picking up his children.

Following the above events, appellant was informed that he was to take the shuttle van to Fort Hood on 5 March 1991. Appellant then scheduled an appointment with a psychiatrist for 5 March 1991. Af-

---

1. The record indicates that appellant saw the civilian doctor on his own accord and not as part of the military medical evaluation.

ter the psychiatrist told appellant "that there was nothing he could do for me," appellant drove around for most of the day to settle his nerves and, without authority, went home. Consequently, he did not take the shuttle van to Fort Hood, which resulted in the second specification of missing movement and absence without leave. When appellant discovered that there was a warrant for his arrest, he surrendered on 14 March 1991.

■ Article 87, UCMJ, provides, "Any person subject to this chapter who through neglect or design misses the movement of a *ship, aircraft, or unit* with which he is required in the course of his duty to move shall be punished as a court-martial may direct" (emphasis added). To constitute the offense, the movement missed must be that of a ship, an aircraft, or a unit. *United States v. Graham*, 16 M.J. 460, 461 (C.M.A.1983). In the case before us, appellant did not miss the movement of a ship or aircraft. That leaves for examination the movement of appellant's unit.

■ When examining an offense involving movement of a unit, government appellate counsel are correct in contending that it is the move that is significant, not the mode of moving. *See United States v. Smith*, 26 M.J. 276, 277 (C.M.A.1988); *Graham*, 16 M.J. at 461. Addressing a unit movement, the Manual for Courts–Martial, United States, 1984 [hereinafter MCM, 1984], Part IV, paragraph 11c(2), explains that "the mode of transportation is not important, whether it be military or commercial, and includes travel by ship, train, aircraft, truck, bus, or walking." Where the movement is of a unit rather than a ship or aircraft, use of a shuttle van as the mode of transportation is not significant in determining if an offense was committed. Of greater importance is the movement of the unit itself.

Here, the unit had already moved, and appellant had initially moved with it to Fort

Hood. Appellant then returned as an individual soldier to Fort Polk. We conclude that his subsequent failure to return to Fort Hood was not a unit movement as contemplated by Article 87.[2] Put simply, appellant did not miss the movement of his unit. His unauthorized departures after his return to Fort Polk were the beginnings of absences without leave. The findings of guilty of the specifications under Article 87 must be set aside.[3]

■ Appellant also alleges that the defense of impossibility was raised as to the failure to repair offense, and that his guilty plea was improvident. If at any time during a court-martial, an accused raises matters which are inconsistent with a plea of guilty, the plea must be rejected when the accused persists in the inconsistency. *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980). When a servicemember is, due to unforeseen circumstances, unable to return at the end of an authorized absence, his absence is excused. MCM, 1984, Part IV, para. 10c(6); *United States v. Lee*, 16 M.J. 278 (C.M.A.1983). The rule that the failure to return on time must be through no fault of the accused is "strictly construed," and limited to those situations where the reasons are out of the accused's control. *United States v. Williams*, 21 M.J. 360, 361, 362 (C.M.A.1986). Appellant's statement was that he could not be seen by the doctor, pick up his children, take the children to his home, and return to the unit at the appointed time. These matters were within his control and did not raise the defense of impossibility. The military judge's inquiry was sufficient to establish that there was no substantial basis for the defense of impossibility. *See United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). Appellant's plea of guilty to this offense was provident.

The allegations of error personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.

---

2. This is not to say that appellant could not have violated an order to board the van.

3. Because of our disposition of these offenses, we need not address appellant's assertion that

the providence inquiry raised the defense of mistake of fact, which only applied to the missing movement specifications.

1982), have been considered and determined to be without merit.

The findings of guilty of Charge II and its two specifications (missing movement) are set aside. Charge II and its specifications are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the sentence is affirmed.[4]

---

4. We have applied the provisions of R.C.M. 1003(d)(3) which authorize a bad-conduct discharge based upon a finding of guilty of two or more offenses for which the combined maximum authorized confinement is six months or more. *See United States v. Guerrero*, 31 M.J. 692, 696 (N.M.C.M.R.1990).